

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2009

# Wells v. Varner

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3752

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Wells v. Varner" (2009). *2009 Decisions.* Paper 1368.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1368

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3752
_____

RODNEY WELLS,

Appellant

v.

BEN VARNER; THE DISTRICT ATTORNEY
OF THE COUNTY OF PHILADELPHIA; THE
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 03-CV-00727)
District Judge:  Honorable Jan E. Dubois

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 21, 2009
Before:  BARRY, SMITH and GARTH, Circuit Judges

(Opinion filed: May 14, 2009)

_____

OPINION
_____

PER CURIAM

Rodney Wells appeals from an order of the United States District Court for the

Eastern District of Pennsylvania, which denied his petition for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254, and which declined to issue him a certificate of appealability (COA). On March 15, 2004, we granted Wells a COA "as to the single issue of whether [Wells] has demonstrated his actual innocence of the Pennsylvania Corrupt Organizations Act offense so as to overcome the procedural default of the ineffectiveness of appellate counsel and due process/corrupt organizations offense claims." We held the decision in abeyance pending a decision in Kendrick v. Attorney General of Philadelphia County, C.A. No. 02-3158. Kendrick was decided on June 7, 2007. See Kendrick v. Attorney General of Philadelphia County, 488 F.3d 217 (3d Cir. 2007). The case is now fully briefed.

The parties are already familiar with the facts of this case. Therefore, we limit our discussion to those facts essential to our decision. In 1986, Wells was convicted of third-degree murder, aggravated assault, conspiracy, possession of an instrument of crime, and violation of Pennsylvania's Corrupt Organizations Act (PCOA),[1] in the Philadelphia Court of Common Pleas. He was sentenced to life imprisonment for murder, consecutive terms of 5 to 10 years for aggravated assault and conspiracy, and a suspended sentence for the PCOA count. The Pennsylvania Superior Court affirmed the conviction, and the Pennsylvania Supreme Court denied allocatur. In 1993 and again in 1997, Wells filed requests for production of grand jury minutes. The requests were denied as Wells had been provided portions of the minutes. The Superior Court affirmed the denial, and Wells

---

[1] 18 Pa. C.S. § 911.

did not seek allocatur.

Meanwhile, in December 1996, Wells filed a pro se petition pursuant to Pennsylvania's Post-Conviction Relief Act (PCRA),[2] seeking information regarding the grand jury proceedings and alleging the prosecutor offered perjured testimony to the grand jury. Counsel was appointed and made additional requests for grand jury notes. The PCRA court denied the petition, denying the request for grand jury notes and finding no merit to the allegation of prosecutorial misconduct during the grand jury proceedings. On appeal, Wells was granted leave to proceed pro se, and argued (a) ineffective appellate counsel for failing to allege trial court error in overruling defense counsel's objections to a witness' reference to Wells' "killings"; (b) violation of due process in that the Commonwealth failed to prove every element of the corrupt organization offense; (c) error in dismissing the PCRA petition; and (d) ineffectiveness of PCRA counsel for not raising the first two claims in the PCRA court. The Superior Court affirmed, finding the first two claims waived for failure to raise them in the PCRA court, and the third claim previously litigated on the appeal from the denial of the grand jury requests. The Superior Court did not explicitly address the ineffectiveness of PCRA counsel claim. The Supreme Court denied allocatur.

In 2003, Wells filed his habeas petition in the District Court alleging once again that (1) appellate counsel was ineffective for failing to allege trial court error in

---

[2] 42 Pa. C. S. § 9541, et seq.

3

overruling defense counsel's objections to a witness' reference to Wells' "killings"; and (2) that his right to due process was violated in that the Commonwealth failed to prove every element of the corrupt organization offense. Wells also raised a third claim: that he was denied due process when the PCRA court failed to grant his petition to review grand jury evidence. The Magistrate Judge recommended denying the petition as the claims were procedurally defaulted. The District Court adopted the recommendation and denied the petition.

As noted above, we granted a COA on the sole issue of whether Wells had demonstrated his innocence of the PCOA offense so as to overcome his procedural default of the first two claims listed above.[3] Failure to raise a claim before the state courts may be excused in "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." McCleskey v. Zant, 499 U.S. 467, 494 (1991). "To establish actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt [and] must also support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." Wright v. Vaughn, 473 F.3d 85, 92 (3d Cir. 2006) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)) (internal citations and quotations omitted). Where the record supports a claim of actual innocence, the proper procedure is to remand to the district court to determine whether the petitioner is

---

[3] We denied a COA on the third claim.

4

actually innocent. United States v. Garth, 188 F.3d 99, 109 (3d Cir. 1999) (remanding where record showed movant might be actually innocent of firearms offense). "[O]ur examination of the record does not amount to a determination of whether there is sufficient evidence to convict . . . [but] whether it supports a claim of factual innocence such that remand is required to allow [the petitioner] an opportunity to establish his actual innocence." Id. at 110.

In Commonwealth v. Besch, 674 A.2d 655 (Pa. 1996), the Supreme Court of Pennsylvania held that the PCOA did not apply where the conduct at issue involved only wholly illegitimate businesses. Soon thereafter, the Pennsylvania legislature responded to Besch by amending the PCOA to apply to businesses with wholly illegitimate operations; see 18 Pa.C.S.A. § 911 (1997); McKeever v. Warden SCI-Graterford, 486 F.3d 81, 83-84 (3d Cir. 2007). This Court filed a Petition for Certification of a Question of Law with the Pennsylvania Supreme Court in conjunction with the appeal in Kendrick, asking whether Besch "establish[ed] a new rule of law that cannot be applied retroactively to cases on collateral review?" Kendrick, 488 F.3d at 219. The Court responded that Besch did not establish a new rule of law, but only explicated the meaning of the scope and term from the PCOA's original enactment in 1973. Id. Thus, if Wells was involved only with a wholly illegitimate business, his conduct did not violate the PCOA.

Appellees disingenuously argue, quoting Besch, that the Commonwealth can prove a violation of the PCOA by presenting evidence of "an intention on the part of any

5

individual within th[e] particular 'enterprise' to use their revenue from the drug sales to infiltrate <u>any business within Pennsylvania</u>," or "<u>evidence that connects this drug enterprise even remotely to a legitimate business or any attempt to infiltrate a legitimate business.</u>"  Appellee's Brief at 38, quoting <u>Besch</u>, 674 A.2d at 660-61 (emphasis added by Appellees).  As is evident from footnote 18 of Appellees' brief, Appellees have taken these quotes completely out of context.  The Court in <u>Besch</u> was not explaining what proof would be sufficient to show a violation of the PCOA; rather, it was noting that in the case before it, the Commonwealth had fallen far short of whatever proof was necessary–it had failed to prove that any individual within the enterprise had attempted to infiltrate any business, and had failed to produce any evidence even remotely connecting the drug enterprise to a legitimate business.  We find it highly unlikely that the Pennsylvania courts would find "evidence that connects [a] drug enterprise even remotely to a legitimate business or any attempt to infiltrate a legitimate business" sufficient for a PCOA conviction under the unamended PCOA statute.

In fact, given the fact that the holding of <u>Besch</u> applies only to a few cases,[4] it is not surprising that there is very little case law concerning what the Commonwealth must show to prove that a legitimate business was involved.  In many cases, the Commonwealth simply conceded that the enterprise in question was wholly illegitimate.

---

[4] <u>See</u> <u>Kendrick</u>, 916 A.2d at 540 ("the very fact of the General Assembly's prompt response to <u>Besch</u> ensured that <u>Besch</u>-related claims would be finite and would decrease with the passage of time.").

See, e.g., Kendrick, 488 F.3d at 219; Commonwealth v. Williams, 936 A.2d 12, 25 (Pa. 2007); Commonwealth v. Shaffer, 734 A.2d 840, 841 n.2 (Pa. 1999). In Commonwealth v. Hunter, 768 A.2d 1136, 1142 (Pa. Super. Ct. 2001), evidence was introduced to show that the Edenborn Social Club, which was the headquarters of a drug enterprise, also served alcoholic beverages and food, had a pool table, video games and pinball machines, and employed at least one person to tend bar. The Court held that this evidence was sufficient to demonstrate that the Edenborn Social Club was a legitimate business for purposes of a PCOA conviction. Id. Similarly, in Commonwealth v. Rickabaugh, 706 A.2d 826, 845 (Pa. Super. Ct. 1997), the Court held that where the defendant used his bar as the base of his cocaine operation, used the proceeds from his drug sales to remodel the bar, and gave an associate money from the bar's cash register to go and purchase drugs, the evidence was sufficient to show that the defendant's activities infiltrated a legitimate business. Id.

Here, the Commonwealth states that it "presented voluminous evidence of the strong connection between the criminal activities of Wells and the other members of 'the Family' (murder, drug trafficking, robbery, witness intimidation, etc.) and the Family's legitimate business dealings." Appellee's Brief at 39. Appellees point to four possible connections to legitimate businesses. First, they point to trial testimony concerning members of the Family who were connected with a company called #9 Production Enterprises, Ltd. Appellees contend that this company was used to "launder the gang's

7

proceeds from its criminal activities." Appellees' Brief at 39. However, Appellees do not point to any evidence showing that Wells had any ties to #9 Production Enterprises. See Commonwealth v. Donahue, 630 A.2d 1238, 1245 (Pa. Super. Ct. 1993) ("in order to sustain a conviction for corrupt organizations, the Commonwealth must prove that there was an ongoing organization engaged in commerce and that the associates of the organization functioned as a continuing unit"). Second, the Commonwealth notes testimony that Charles Harris, who had a record production company and managed recording groups, had conversations with Wells and others about how they "could take drug money and launder it through promoting concerts and record production with different groups." Appellees' Brief at 40, S.A. 1101. However, the Commonwealth points to no evidence that Wells followed through with the money laundering. Third, Appellees state that the Mark V Bar is another "legitimate, or at least quasi-legitimate business[] corrupted by the activities of Wells and the Family," but they again point to no evidence that Wells was connected with the bar. Appellees' Brief at 42.

Fourth, Appellees state that "the Commonwealth's investigation produced evidence that Commonwealth witness Renee Jones had knowledge that [one of Wells' codefendants], with whom she had lived, 'sold drugs out of [Wells's] variety store.'" Appellees' Brief at 43. Appellees' only evidence of this assertion is a sidebar conference where the Assistant District Attorney cautions another attorney (it is not clear whom he was addressing) to not "get into the basis of how [Commonwealth witness Renee Jones]

8

knows that [the attorney's client] sold drugs out of Hop's variety store." S.A. 847.[5]

There are a number of problems with this "evidence." First, although Appellees may be correct in substituting "Wells's" for "Hop's," they have not pointed to evidence in the record showing that Wells is the same as "Hop." Second, it appears that Wells' attorney was objecting to any introduction of such evidence, because the evidence concerned events that occurred outside the two-year statute of limitations for PCOA activity. S.A. 847. Although the objection was overruled, the Court did note that it believed "*part* of her testimony is certainly within the statute." S.A. 848-49 (emphasis added). Thus, it is not clear whether any such evidence would be relevant to Wells' PCOA conviction. Wells also argues that considering this evidence would violate Crawford v. Washington, 541 U.S. 36 (2004), which generally bars admission of out-of-court testimonial statements by witnesses who have not been available for cross-examination.

We conclude that the record as it now stands supports Wells' claim that he is actually innocent of the PCOA count. We will therefore remand to the District Court to allow Wells the opportunity to prove his actual innocence[6] and to give the Commonwealth "the opportunity to produce any additional evidence to refute such a claim." Garth, 188 F.3d at 114. In the District Court, the Commonwealth "may present

---

[5] Appellees acknowledge that Jones was not questioned on this topic on the record.

[6] Wells need not produce evidence, but may rest on the record as it stands now and require the Commonwealth to present additional "admissible evidence" of his factual guilt. Garth, 188 F.3d at 110 n.13 (citing Bousley v. United States, 523 U.S. 614, 624 (1998)).

whatever admissible evidence it has to rebut [Wells'] claim, even if the evidence was not previously admitted." Id. If the District Court concludes that Wells has met his burden of establishing actual innocence of the PCOA count, then it must consider his claim that his due process rights were violated when the Commonwealth failed to prove every element of the corrupt organization offense.[7]

Accordingly, we remand for further proceedings consistent with this opinion.[8]

---

[7] It appears that Wells' ineffective assistance of appellate counsel claim is unrelated to his PCOA conviction, and that procedural default of that claim would therefore not be excused, even if Wells establishes actual innocence of the PCOA count. Because we do not have the state court record available to us, we leave it to the District Court to make this determination in the first instance.

[8] We grant Wells' motion for a remand solely to the extent that it requests a remand; all other requests contained therein and all other pending motions filed by either side are denied.