J. S76018/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                             :          PENNSYLVANIA
                             :
                v.             :
                             :
KAREEM EVANS,              :
                           :
          APPELLANT     :
                           :      No. 2475 EDA 2015

Appeal from the Judgment of Sentence July 13, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005531-2014

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:         **FILED NOVEMBER 21, 2016**

Appellant, Kareem Evans, appeals from the Judgment of Sentence entered by the Bucks County Court of Common Pleas on July 13, 2015. After careful review, we affirm.

The facts, as established at trial and set forth by the trial court, are as follows:

> The [v]ictim in this matter is a twenty-year-old resident of Philadelphia and mother of two children. In August of 2014, the victim, a former home health aide, had begun to engage in prostitution, advertising her services as an "escort" on an internet website called "Backpage."
>
> On August 8, 2014, at approximately 3:00 a.m., the victim received a telephone call from a man identifying himself as "Kareem," later identified as [Appellant]. The victim

---

[*] Former Justice specially assigned to the Superior Court.

agreed to meet [Appellant] at 213 Market Street in Bristol Borough, Bucks County. Lorenzo Broggi[] drove the victim to the prearranged location where she met [Appellant]. [Appellant] then led her on foot to another location, an unoccupied residence located on Cedar Street in Bristol Borough. After entering an unfurnished backroom of that building, the victim plugged the charger for her cellphone into a wall outlet.

The victim, already concerned about the change of location, became frightened when she heard someone jiggling the handle of the front door. When [Appellant] left the backroom and headed for the front door, the victim immediately used her cell phone to call Mr. Broggi, her driver. When [Appellant] returned, he attempted to take the phone from the victim but she was able to temporarily regain control of it. The victim then attempted to leave the building. When she began to do so, she was unexpectedly confronted by a second man, later identified as co-defendant Qudre McMillan. McMillan was armed with a shotgun. He pointed it at her and told her not to move. Raising both hands, the victim told McMillan that he could take the ten dollars in her pocket and her phone. McMillan continued to approach the victim, forcing her to retreat into the backroom.

[Appellant] then "dismissed" McMillan from the room and proceeded to orally and vaginally rape the victim, threatening to "punch her in her f—ing head" and kill her if she did not do what she was told. [Appellant] ejaculated inside her. As [Appellant] sexually assaulted the victim, McMillan occasionally watched from his position in the hallway. When [Appellant] then left the room, McMillan entered. The victim continued to cry as McMillan vaginally raped her. He ejaculated on her buttocks. McMillan then left the room. While the victim waited for her attackers to return, she heard a door shut. When neither attacker returned after two minutes, the victim fled the building.

Shortly after dropping the victim off at the Market Street address where [Appellant] was waiting, Mr. Broggi received a call from the victim. When he answered, the victim did not speak to him. Mr. Broggi heard a scuffle in the background. As he listened, he heard a male voice.

Mr. Broggi testified that he heard the victim crying and yelling. He specifically heard her say that she did not have any money with her. He also heard her tell someone to leave her alone, and not to hurt her. The phone call abruptly ended. Realizing that the victim was in trouble, Mr. Broggi returned to Market Street in an attempt to locate the victim. He circled the area sounding the horn of his vehicle. M. Broggi's efforts to locate the victim were unsuccessful.

At approximately 4:30 a.m., Arthur Carter and his son were driving on Market Street approaching Cedar Street when the victim ran out from Cedar Street and ran in front of his van. When Mr. Carter lowered his window to speak to her, she told him that she had been raped and that she needed help. Mr. Carter testified that the victim was hysterical, that she was crying, and that her hair looked "like somebody had been dragging her around." Her clothes were askew and her underwear was pulled out of her pants. Mr. Carter called 911 and remained with her until assistance arrived. The victim was then transported from the scene to Abington Memorial Hospital for a Sexual Assault Examination. During that examination, vaginal and rectal swabs were obtained.

A search warrant was obtained for the Cedar Street address. During the search, the cell phone charger to the victim's telephone was found on the floor of the back room of the residence. Police contacted the victim's cell phone carrier who informed them that the victim's cell phone was located at the intersection of Headley Street and Pine Street in Bristol Borough, with an uncertainty of thirty-five meters. [Appellant] was staying at 801 Pine Street which is located at the intersection of Headley and Pine Streets. That residence is approximately six blocks away from Cedar Street where the assaults occurred.

On August 9, 2014, police observed McMillan in the area of Cedar Street. On that same date, police executed a search warrant of 801 Pine Street. When police arrived, [Appellant] was present. While detectives were executing the search warrant, McMillan arrived at the residence. The victim's cell phone was found concealed beneath a seat cushion of a sofa inside the residence. Kalesha Cruz,

> [Appellant's] fiancée, told police and later testified that she observed McMillan give [Appellant] the cell phone on Friday, August 8, 2014.
>
> A photo array, which included an image of [Appellant] as Photograph Number 2, was displayed to the victim. The victim almost immediately pointed to Photograph Number 2, gasped, said, "That's him. That's the man who raped me," and began to cry.
>
> The vaginal and rectal swabs of the victim were submitted to the Pennsylvania State Police Bureau of Forensic Services for serological and DNA analysis. The items were determined to contain spermatozoa and the DNA of [Appellant] and McMillan.

Trial Ct. Op., 1/7/16, at 2-5 (citations omitted).

Prior to trial, on February 27, 2015, the Commonwealth filed a written motion seeking to admit evidence of witness intimidation for the purposes of demonstrating consciousness of guilt. After an offer of proof, the trial court granted the motion over the objections of counsel for Appellant and co-defendant Qudre McMillan ("McMillan").

On March 9, 2015, Appellant's and McMillan's three-day joint jury trial began. The Commonwealth presented the testimony of ten witnesses, including the victim. The court ordered all non-police and non-expert witnesses sequestered from the courtroom during witness testimony. Relevant to this appeal, during the victim's cross-examination by McMillan's counsel, the victim became distraught and asked to leave the witness stand. The court recessed for 15 minutes, after which, over Appellant's counsel's

objection, the court permitted the victim to retake the stand and McMillan's counsel to continue with cross-examination.

On March 13, 2015, the jury convicted Appellant of Rape by Threat of Forcible Compulsion, Involuntary Deviate Sexual Intercourse by Threat of Forcible Compulsion, Robbery by Threat of Serious Bodily Injury, Robbery by Force, Terroristic Threats, Theft by Unlawful Taking, Criminal Conspiracy to Commit Robbery by Threat of Serious Bodily Injury, and Criminal Conspiracy to Commit Theft.[1, 2]

The court deferred sentencing for Appellant to undergo an evaluation by the Sexual Offender Assessment Board pursuant to 42 Pa.C.S. § 9799.24. Based upon the findings of the Board, and with the agreement of the parties, the court found Appellant to be a Sexually Violent Predator.

---

[1] 18 Pa.C.S. § 3121(a)(2); 18 Pa.C.S. § 3123(a)(2); 18 Pa.C.S. § 3701(a)(1)(ii); 18 Pa.C.S. § 3701(a)(1)(v); 18 Pa.C.S. § 2706(a)(1); 18 Pa.C.S. § 3921(a); and 18 Pa.C.S. § 903(c), respectively.

[2] The jury also convicted McMillan of Rape, Robbery by Threat of Serious Bodily Injury, and Criminal Conspiracy to Commit Robbery by Threat of Serious Bodily Injury. The court sentenced McMillan to an aggregate sentence of 20-40 years' incarceration. McMillan's appeal from his Judgment of Sentence is pending before this Court. *See Commonwealth v. McMillan*, No. 2490 EDA 2015.

A separate jury convicted Appellant of Criminal Solicitation (Witness Solicitation). 18 Pa.C.S. § 902(a). The court sentenced Appellant to 3 ½ to 10 years' incarceration, to be served consecutively to the sentence Appellant challenges in the instant appeal. Appellant's appeal from his Judgment of Sentence for Criminal Solicitation (Witness Intimidation) is pending before this Court. *See Commonwealth v. Evans*, 383 EDA 2016.

On July 13, 2015, the court sentenced Appellant to an aggregate sentence of 40-80 years' incarceration, comprised of four consecutive terms of 10 to 20 years' incarceration on the convictions for Rape by Threat of Forcible Compulsion, Involuntary Deviate Sexual Intercourse by Threat of Forcible Compulsion, Robbery by Threat of Serious Bodily Injury, and Criminal Conspiracy to Commit Robbery by Threat of Serious Bodily Injury convictions, all first-degree felonies. The court imposed no further penalty on the other convictions.

Appellant did not file a Post-Sentence Motion. On August 10, 2015, Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following three issues for our review:

1. Did the trial court err in allowing the complainant, in violation of the sequestration order, to return to the stand to testify without allowing the defense to obtain information as to what she was told by the District Attorney, the officer, and a victim advocate to encourage her to retake the witness stand?

2. Did the trial court err and deny Appellant due process in allowing the Commonwealth to introduce evidence of witness intimidation against Appellant in violation of Pennsylvania Rules of Evidence 401, 402, 403, and 404, when these allegations were not only irrelevant to the alleged charges in the instant case, but unproven at the time of trial and heavily in dispute. As such their prejudicial impact far outweighed their probative value?

3. Did the trial court abuse its discretion in imposing an aggregate sentence of 40 to 80 years because:

> (a) the sentence is effectively a life sentence and constitutes an illegal sentence for the crimes charged; and
>
> (b) the maximum sentence imposed on four counts which exceeded the aggravated range of sentences running consecutively to each other is unduly harsh considering the nature of the crime and the length of the imprisonment imposed against a 22 year old?

Appellant's Brief at 5-6.

In his first issue, Appellant claims the trial court abused its discretion in allowing the victim to return to the witness stand, in violation of the court's sequestration order, without first permitting his counsel to ascertain whether the victim had discussed the content of her testimony with the District Attorney, a police officer, and a victim advocate, during the court's recess. Appellant's Brief at 17-18. Appellant argues that, because the court precluded his counsel from examining under oath those people to determine what they said to the victim to convince her to continue testifying, the court was unable to determine the appropriate remedy for violation of the sequestration order. *Id.* at 18.

A trial court may sequester witnesses in order to "prevent a witness from shaping his [or her] testimony with evidence presented by other witnesses." *Commonwealth v. Henry*, 706 A.2d 313, 320 (Pa. 1997) (citation omitted). Whether there has been a violation of a sequestration order is a question of fact for the trial court. *Commonwealth v. Marinelli*,

690 A.2d 203, 219 (Pa. 1997). This Court will not overturn the decision of the trial court where it is "supported by sufficient credible evidence." *Id.*

With respect to Appellant's claim, the trial court opined as follows:

> In the instant case, after the victim left the witness stand, this [c]ourt took a fifteen minute recess. Prior to allowing the witness to continue her testimony, this [c]ourt allowed counsel to question the victim as to whether she discussed her testimony while outside the courtroom. The victim testified that she did not. This [c]ourt also identified the individuals who spoke with the victim and asked each person individually if the content of the victim's testimony was discussed. Each person represented to this [c]ourt that her testimony was not discussed. Moreover, counsel for the [d]efendants conceded that they had no basis [to] contradict the representations made to this [c]ourt. This [c]ourt therefore properly found that no violation of the sequestration order occurred.
>
> As to [Appellant's] contention that the [c]ourt should have inquired into the exact content of the communications, such an inquiry would not have been relevant. The purpose of sequestration is to prevent a witness from shaping his or her testimony with evidence presented by other witnesses. [ ] Therefore, the [c]ourt properly limited its inquiry to whether the victim's testimony was discussed.

Trial Ct. Op. at 8-9 (citation omitted).

Our review of the evidence of record, including the trial transcript, confirms the trial court's conclusion that no violation of the court's sequestration order occurred. The victim left the witness stand abruptly during her cross-examination, during which time the court recessed. The victim then returned to the courtroom. The victim testified, and the parties who spoke to the victim during the court's recess reported, that they did not

discuss the victim's testimony. N.T., 3/10/14 (morning), at 126-27, 141-42. Furthermore, neither counsel for Appellant nor counsel for McMillan reported to the court having any reason to believe that the victim spent the court's recess discussing the content of her testimony. *Id.* at 124-26.

Moreover, permitting the victim to continue her testimony after the recess did not undermine the purpose of sequestration—preventing a witness from molding her testimony based upon testimony given by a previous witness. The victim in this case was not present during the testimony of any other witnesses and therefore, even after removing herself from the witness stand during her testimony, could not have shaped her testimony in accordance with testimony previously taken from other witnesses. For these reasons, we conclude there was sufficient credible evidence for the trial court to find that no sequestration violation took place. Accordingly, Appellant is not entitled to relief on this issue.

In his second issue, Appellant claims that the trial court abused its discretion by admitting evidence of his acts of witness intimidation and his plan to induce the victim not to testify. Appellant's Brief at 19. Upon Motion by the Commonwealth, the trial court permitted, as proof of consciousness of guilt, the admission of redacted portions of five prison telephone calls between Appellant and his fiancée Kaleshia Cruz ("Cruz"), and a letter that Appellant wrote to Cruz, which demonstrated that Appellant and Cruz

planned to pay the victim not to testify at trial. The court also permitted Cruz to testify.

Appellant argues that the prejudice to him outweighed the probative value of this "irrelevant evidence," and that the telephone calls, specifically, did not suggest intimidation or consciousness of guilt.[3] *Id.* at 21. We disagree.

Initially, we note that,

> [t]he standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (internal citations omitted).

It is well-settled that "any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007).

---

[3] To the extent that Appellant argues in his Brief that the trial court erred in permitting the introduction of this evidence because his Witness Intimidation charges were severed from the charges herein, and, therefore, evidence of the acts giving rise to those charges were inadmissible, we find this claim waived as Appellant did not raise this alternative theory of error in his Pa.R.A.P 1925(b) statement, and the trial court did not address it. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii).

In the instant matter, the trial court explained its evidentiary ruling as follows:

> The evidence admitted at trial established that following his arrest, [Appellant] and his fiancée, Kalesha Cruz, entered into a conspiracy to identify and locate the victim and then to offer her money in an effort to persuade her not to appear and/or testify in court. This [c]ourt permitted the Commonwealth to introduce a letter written by [Appellant] shortly after his arrest, recorded prison calls between [Appellant] and Cruz and Cruz's in-court testimony as evidence of consciousness of guilt.
>
> In the letter [Appellant] wrote:
>
>> I was wrong. We were supposed to rob her, that's it. But things got out of hand. She a girl from Back Page prostituting for money. If you can get in touch with her and offer her money, I'm sure she won't show up. You just need to get the correct information . . . .
>
> In a recorded call that occurred on August 14, 2014, Cruz advised [Appellant], "No luck yet. I'm searching. I sent your brother the information, so hopefully he's been searching." Cruz testified that she was explaining the status of her efforts to find the victim. In a recorded call that occurred on August 30, 2014, Cruz told [Appellant] that she had to think of what to say. At trial, Cruz testified that she was referring to what she should say when she talked to the victim. During the August 30th conversation, [Appellant] told Cruz that, if she talks to the victim, she should mention the money first. In a recorded call that occurred on August 31, 2014, Cruz told [Appellant] that she called "the number." At trial, Cruz testified that this comment referred to the fact that she had called the telephone number for "Backpage," the website [Appellant] and McMillan used to contact the victim. Cruz also told [Appellant] that she would try to speak with the victim when the victim appeared to testify at an upcoming court date.

> . . . Evidence concerning [Appellant's] attempt to offer the victim a bribe not to testify was therefore admissible against [Appellant].

Trial Ct. Op. at 5-6 (citations omitted).

We agree with the trial court. After reviewing the evidence of record, and the relevant authority, we conclude the trial court did not abuse its discretion in admitting the evidence and testimony cited *supra*, for the purposes of establishing Appellant's consciousness of guilt.

Additionally, as noted by the trial court, it unambiguously instructed the jury that "any evidence of witness intimidation could only be considered by the jury for purposes of determining consciousness of guilt as to the crimes charged in the instant matter and not for any other reason[.]" *Id.* at 7. Because a "jury is presumed to have followed the trial court's instructions[,]" we likewise agree with the trial court that Appellant was not prejudiced by the admission of the challenged evidence. *Commonwealth v. Burno*, 94 A.3d 956, 977 (Pa. 2014). Accordingly, Appellant's claim fails.

In his third issue, Appellant claims to challenge both the legality of and the discretionary aspects of his sentence. First, Appellant argues that his 40 to 80 year sentence is "illegal because it is in essence a life term." Appellant's Brief at 23. Then, Appellant argues that the trial court abused its discretion in sentencing Appellant in the aggravated range and in imposing consecutive sentences. *Id.* at 25-28. We consider these issues in turn.

Initially, we reiterate that Appellant did not file a Post-Sentence Motion in which he challenged the sentence imposed by the trial court. However, Appellant purports to challenge the legality of his sentence. When a defendant challenges the trial court's authority to impose a specific sentence, a defendant has raised a legality of sentence challenge. *Commonwealth v. Foster*, 17 A.3d 332, 345 (Pa. 2011). A challenge to the legality of sentence is non-waivable, and may be considered for the first time on appeal. *See*, *e.g.*, *Commonwealth v. Robinson*, 931 A.2d 15, 19-20 (Pa. Super. 2007).

With respect to his first sentencing sub-issue, Appellant has mischaracterized it as a challenge to the legality of his sentence. Within his Brief, Appellant argues only that his sentence is excessive given his age at the time he committed the crimes for which the jury convicted him and the likelihood he will serve most, if not all, of his sentence. Appellant's Brief at 23-24.

Herein, the trial court sentenced Appellant to four consecutive terms of ten to twenty years' incarceration. Appellant concedes that these sentences are within the statutory maximums, and acknowledges that, "Pennsylvania does not recognize an indeterminate sentence as a life sentence where a prisoner is eligible for parole during his lifetime." *Id.* at 23 (citing *Commonwealth v. Baker*, 78 A.3d 1044, 1052 (Pa. 2013). Accordingly, as this issue does not relate to the trial court's authority to impose a sentence

pursuant to the statutes under which the jury convicted Appellant, he has not challenged the legality of his sentence.

In his second allegation of error within his challenge to his sentence, Appellant contends that the trial court imposed an excessive sentence. This averment challenges the discretionary aspects of his sentence. After reviewing the record, we conclude that Appellant has waived this issue on appeal.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four[-]part analysis to determine: (1) whether
> appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) **whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence**, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted) (emphasis added).

Instantly, Appellant failed to preserve the issue at the time of sentencing or in a Post-Sentence Motion. Accordingly, Appellant has waived his right to challenge to the discretionary aspects of sentence on appeal.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2016